Argued and submitted March 26, reversed and remanded May 9, 1984

GORACKE et al,
*Respondents,*

*v.*

BENTON COUNTY,
*Petitioner,*

*and*

STARR,
*Petitioner.*

(82-111; CA A28674)

683 P2d 106

Jeffrey G. Condit, Corvallis, argued the cause and filed the brief for petitioner Benton County.

Peter L. Barnhisel, Corvallis, argued the cause for petitioner Stanley Starr. With him on the brief was Fenner, Barnhisel & Willis, Corvallis.

Richard P. Benner, Portland, argued the cause and filed the brief for respondents.

Before Gillette, Presiding Judge, Joseph, Chief Judge, and Van Hoomissen, Judge.

JOSEPH, C. J.

**JOSEPH, C. J.**

Petitioners[1] Starr and Benton County appeal from an order of the Land Use Board of Appeals (LUBA) that remanded the county's approval of a minor partition of Starr's 80-acre parcel in an exclusive farm use zone. Respondents contended before LUBA that (1) the county "misapplied" the requirement of Goal 3 that "minimum lot sizes * * * utilized for any farm use zones shall be appropriate for the continuation of the existing commercial agricultural enterprise [within] the area"; (2) the county's "conclusion that [the partitioned] parcels are 'appropriate' is not supported by substantial evidence"; and (3) the partition "is not appropriate to continue the existing commercial agricultural enterprise in the area and violates Goal 3 * * *."[2]

Pursuant to Oregon Laws 1979, ch 772, §§ 5 and 6, as amended by Oregon Laws 1981, §§ 36 and 36a,[3] LUBA submitted a recommended order to the Land Conservation and Development Commission (LCDC) for a determination on the statewide land use planning goal issues raised by respondents. LUBA recommended that each of respondent's contentions be sustained. LUBA construed Goal 3 and LCDC's implementing rule (OAR 660-05-015) to mean that

"there may be no degradation of the agricultural enterprise at all. The county's findings acknowledge the possibility of some degradation, however minor. As such, the county has been unable to show compliance with OAR 660-05-015(4). * * * We conclude the rule requires a showing of no harm, however slight, to the existing agricultural enterprise before a division of agricultural land may take place. If we read the rule to simply explain the Goal 3 minimum lot size standard, the county has failed to meet the standard. Its proposed division is not 'appropriate' in that it does not 'maintain' absolutely the existing commercial agricultural enterprise."

---

[1] We refer to the parties by their designations in this court.

[2] Respondents also argued that the county's decision violated the applicable local ordinance. The final order does not decide the appeal on the basis of that alternative argument.

[3] Sections 5 and 6 were repealed by Or Laws 1983, ch 827, § 59. The 1979 statute, as amended in 1981, is referred to in this opinion as "the Act."

LCDC determined that the quoted language should be deleted from the order and replaced, *inter alia,* with the following language:

"There remains the issue of the application of OAR 660-05-015. The Rule directs counties to look at whole commercial farms, not component lots or fields * * *.

"This means that a county must not rely on the size of parcels or fields alone as the standard for land divisions. There must be some *agricultural* reason beyond the fact that a certain parcel or field size exists among area farms.

"* * * As used in the Rule, 'maintain' is synonymous with 'continue' in Goal 3 itself. These terms mean counties must choose parcel sizes that will not contribute to decline of the commercial agriculture in an area. Stated as a positive, Goal 3 and the Rule tell counties to choose parcel sizes that will help keep area farms successful.

"We do not understand 'maintain' or 'continue' to mean a parcel size must have no adverse effects whatsoever on an area's agriculture. Such an interpretation would probably halt most land divisions. 'Maintain' and 'continue' imply a balance.

"Land divisions often have both positive effects and negative effects on an area's agriculture. The county's task is to ensure that a chosen parcel size, on balance, considering positive and negative effects, will keep the area's commercial agriculture successful, will not contribute to the decline.

"In the case before us, there is evidence in the record that a 40-acre parcel size will have adverse effects on commercial grass seed and grain farming. Petitioners put on evidence that 40-acre parcels reduce efficiency and increase the price of land per acre considerably beyond what a grass seed and grain farmer is willing to pay for it.

"The county dismisses these adverse effects as insignificant. However, the county offers no *agricultural* reason why 40-acre parcels will, in spite of these adverse effects, 'maintain' or 'continue' the principal commercial agricultural enterprise in the area.

"We conclude that the county has misapplied Goal 3 and the Rule by failing to explain how, in the face of evidence of adverse effects, a 40-acre parcel size will 'maintain' or 'continue' the existing commercial grass seed and grain enterprise in that part of Benton County." (Emphasis in original.)

However, LCDC failed to remove other language from LUBA's recommended order which was similar in substance to the deleted language and which, therefore, differed in substance from LCDC's insertion.[4]

LUBA's final order incorporated LCDC's determination. However, one of the two participating board members dissented. Petitioner Starr argues that the effect of the tie vote was to affirm the county's decision, notwithstanding LCDC's determination that the decision violated Goal 3. Under sections 5 and 6 of the Act, LUBA was empowered to make the final agency decision on all allegations except those pertaining to "violation of the goals." In connection with goal issues, however, LUBA was required to prepare a "recommendation" and submit it to LCDC. Section 6(3) provided, as relevant:

> "[LCDC] shall review the recommendation of [LUBA] and any exceptions filed thereto. * * * [LCDC] shall issue its determination on the recommendation of [LUBA] and return the determination to [LUBA] for inclusion in [LUBA's] order under section 5, chapter 772, Oregon Laws 1979."

We do not understand Starr to argue that LUBA was not *required* to include LCDC's determination in its final order. His argument is that a majority of LUBA *did not* vote to include the LCDC determination in the final order, although LUBA was required to do so, and that the Act "unequivocally establishes that it is *the order of LUBA* that governs disposition of appeals" from local land use decisions. (Emphasis supplied.) Starr suggests that there may be other remedies for "LUBA's failure to follow the statute" but that LCDC's determination does not become a part of LUBA's final order unless LUBA, by a majority vote, makes it so. We disagree. Nothing in the statutory language suggests that *any* action by LUBA (other than clerical) was necessary to make LCDC's determination a part of the final order. The statute is to the plain effect that an LCDC goal determination is part of the decisional process in appeals to LUBA and that LCDC is the final deciding body on goal issues. The statute, not LUBA,

---

[4] LUBA also submitted to LCDC an alternative recommended order that would have affirmed the county's decision. The alternative order is not relevant to the issues on which we base our decision of this appeal. We therefore do not decide whether, in view of the county's findings and the record, there is any basis on which the county's decision can be reversed if LCDC's, rather than LUBA's, interpretation of Goal 3 and of the implementing rule is applied.

made LCDC's determination part of LUBA's final order. Insofar as the opinion of the dissenting board member implies otherwise, it is in legal effect a nullity.[5]

Petitioners argue next, in euphemistic ways, that the final order is internally inconsistent and incomprehensible. The language LCDC deleted from LUBA's recommended order and LCDC's insertion contain diametrically different interpretations of the applicable provisions. LUBA would have construed Goal 3 and OAR 660-05-015 to prohibit any partition that would result in *any* harm to the existing commercial agricultural enterprise, while LCDC concludes that the goal and the rule do not impose that absolute prohibition but require a balancing of positive and negative effects to "keep the area's commercial agriculture successful * * *." However, LCDC substituted its interpretation for LUBA's only in connection with the recommended order's discussion of respondents' first contention. LCDC left LUBA's recommended discussion of the second and third contentions undisturbed and thereby allowed that discussion to be included in the final order, although it contained the same interpretation of the goal and the rule that LCDC rejected in the earlier context.[6]

■■ The resulting contradictions affect more than the order's interpretation of the relevant law. They create an inconsistency in LUBA's disposition of the appeal and its instructions to the county on remand. The portion of the order that decides respondents' first contention has the effect of remanding to the county to apply LCDC's balancing test to determine whether the proposed partition satisfies Goal 3 and

---

[5] Starr makes a companion argument that "an action of less than a majority of the board is not an act of the board" and that, therefore, there *was* no final order. All of the issues decided by the order pertain to an alleged violation of a goal. LCDC's determination was therefore dispositive, and Starr's companion argument fails for the same reasons as the argument discussed in the text.

[6] The order states, in connection with respondents' second contention:

"As we understand the rule to require that any new lots maintain the enterprise, in the sense that there is no harm done to the enterprise no matter how small or speculative, this partitioning appears to fall short of the standard."

The order explains its disposition of the third contention by stating:

"* * * LCDC agrees with [respondents] that the word 'appropriate' in Goal 3 [as] explained by OAR 660-05-015 means 'maintain' in the sense that no damage be done * * *."

LCDC's rule; however, the order decides respondents' third contention by applying LUBA's "no harm" test and by ruling in effect that, as a matter of law, the partition would necessarily violate the goal and the rule.[7] Even if we could discern what LCDC intended, it is not our function to do so. Our function is to review the decisions of the agency; however, it is the agency's duty and prerogative to say what it has decided. *Compare* ORS 183.470; ORS 183.482(8)(a)(A). A remand for reconsideration is required.

Petitioners make numerous other assignments. With one exception, their arguments do not require discussion in view of our disposition. The exception is petitioners' argument that the term "*agricultural* reason" (emphasis in original), used by LCDC to describe the kind of explanation the county must offer for finding the partition to be "appropriate," is inexplicable and constitutes a new policy without a predicate in Goal 3, OAR 660-05-015 or any other promulgated rule. *See* ORS 197.040(1)(c). It is sufficient for now to note that, without more explanation than the order offers, we do not find the questioned term to have any apparent meaning in the context of the order or of the goal and rule.

Reversed and remanded for reconsideration.

---

[7] Respondents suggest in another context that there was an evidentiary aspect to their third contention. However, it was not seriously disputed before LUBA—and the county found—that the partition will have some effect on prices of land per acre and on agricultural efficiency. The parties disputed what legal consequences follow from those detrimental effects on the existing commercial agricultural enterprise. The portion of the order in question holds that Goal 3 and the LCDC rule preclude partitions that result in *any* detriment to the existing enterprise.